IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EDGARDINE BARNES, as Personal Representative of the Estate of James David Barnes, Jr., deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:19-CV-246-WKW [WO] |
| SOUTHERN ELECTRIC CORPORATION OF MISSISSIPPI and WILLIAM C. SELLERS, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant William Craig Sellers's Motion to Reconsider Order Denying Motion for Leave to Amend. (Doc. # 31.) Plaintiff filed a response in opposition. (Doc. # 32.) For the reasons that follow, the motion is due to be denied.

### I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) and 28 U.S.C. § 1441(a) (removal jurisdiction). The parties do not contest personal jurisdiction or venue.

## II. BACKGROUND

In 2018, Mr. James David Barnes, Jr., succumbed to his injuries after a traffic collision involving his vehicle and the truck that Defendant Williams C. Sellers was operating on behalf of his employer, Defendant Southern Electric Corporation of Mississippi. Mr. Barnes's wife, as the personal representative of his estate, brought this wrongful death action under the Alabama's wrongful death statute, *see* Ala. Code § 6-5-410, alleging that Defendants' negligent and wanton conduct caused her husband's death. Mr. Sellers timely filed an answer, denying liability and raising various affirmative defenses. (Doc. # 1-1 (Compl.).) Thereafter, the Uniform Scheduling Order established August 19, 2019, as the deadline for filing motions to amend the pleadings. (Doc. # 15, § 4.)

On April 14, 2020—nearly eight months after the August 19 deadline—Mr. Sellers filed a motion to amend his answer to allege the affirmative defense of failure to mitigate damages. As grounds for the untimely amendment, Mr. Sellers represented that, during Plaintiff's deposition on February 19, 2020, "[t]estimony was elicited . . . indicating the Plaintiff refused medical treatment relating to blood transfusions and or the administration of blood products."[1] (Doc. # 27, at 2.)

---

[1] This statement is ambiguous because Mr. Barnes, not Plaintiff, was the patient. It is unclear if Plaintiff testified that she refused medical treatment on Mr. Barnes's behalf or if she testified that Mr. Barnes refused medical treatment. The ambiguity, however, is not material for purposes of resolving the motion to reconsider because, as discussed below, Mr. Sellers presents no good cause for waiting nearly six months after his receipt of the medical records on October 11, 2019, to move to amend his answer.

2

Opposing the motion, Plaintiff submitted Mr. Sellers's initial disclosures indicating that Mr. Sellers possessed the decedent's medical records as early as June 25, 2019. (Doc. # 29-3.) She also submitted Mr. Barnes's medical records containing multiple references that the deceased had refused a blood transfusion against his physicians' recommendations. (Doc. # 29-2.) Mr. Sellers's motion failed to explain why those medical records did not put him on notice of the facts underlying his proposed amendment, namely, that Mr. Barnes had refused potentially life-saving blood products against his medical providers' recommendations. Hence, the motion to amend was denied because it lacked a sufficient showing of good cause for its untimeliness. (Doc. # 30.)

Now, urging the court's reconsideration, Mr. Sellers's counsel, Ethan R. Dettling, represents that his initial disclosures (Doc. # 29-3) mistakenly stated that the decedent's medical records from Baptist Medical Center South were "in [his] possession" on June 25, 2019. (Doc. # 31-1 (Ethan R. Dettling Declaration).) Mr. Dettling explains that, in fact, the records were not in his possession and that he "listed records from Baptist South out of an abundance of caution and in order to prevent anyone of accusing [him] of failing to disclose these potentially relevant records on the initial disclosure pleadings." (Doc. # 31-1, ¶ 2.) Mr. Dettling states that he did not receive the medical records until October 11, 2019, the date Baptist South complied with his subpoena, and that on December 19, 2019, he hired a legal

3

nurse consultant "to aid in understanding" the medical records. (Doc. # 31-1, ¶ 8.) Then, on February 19, 2020, during Plaintiff's deposition, Mr. Dettling indicates that he learned additional details concerning Mr. Barnes's medical treatment. (Doc. # 31-1, ¶ 9.) He contends that, shortly after this deposition, he began working remotely based on the COVID-19 pandemic and that he filed his motion to amend the answer to allege the affirmative defense of failure to mitigate on April 14, 2020.

### III. STANDARD OF REVIEW

A district court has "plenary power" over its interlocutory orders. *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (citation omitted). When reviewing an interlocutory decision, "the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60(b)." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008). So a district court may reconsider an interlocutory ruling "for any reason it deems sufficient." *Canaday v. Household Retail Servs., Inc.*, 119 F.Supp.2d 1258, 1260 (M.D. Ala. 2000). Because the motion for reconsideration concerns the ruling on Mr. Sellers's motion for leave to amend its answer (Doc. # 27), which was filed after the expiration of the deadline in the scheduling order, the former is evaluated under the standard articulated in *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417 (11th Cir. 1998).

## IV. DISCUSSION

A party requesting leave to amend a pleading after the time required by the district court's scheduling order "must first demonstrate good cause under Rule 16(b) before [the court] will consider whether amendment is proper under Rule 15(a)." *Sosa*, 133 F.3d at 1419. A district court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted). If the plaintiff makes the required good cause showing, the district court may give leave to amend the complaint and "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

In his motion for reconsideration, Mr. Sellers still has not demonstrated that he acted diligently in seeking to amend his answer. Mr. Sellers's motion for reconsideration clarifies two things—first, that Mr. Sellers's counsel did not possess the medical records on June 25, 2019, as suggested in his initial disclosures; and second, that he issued a subpoena to Baptist South for Mr. Barnes's medical records on September 16, 2019 (almost a month after the amendment deadlines), and received the medical records on October 11, 2019.

This clarification as to when Mr. Sellers received Mr. Barnes's medical records perhaps provides good cause for why Mr. Sellers did not move to amend his answer prior to the August 19, 2019 scheduling order deadline.  But it does not provide good cause for the nearly six-month delay between his receipt of the medical records and the filing of his motion to amend the answer.

The fact that Mr. Barnes refused a potentially life-saving blood transfusion against his medical providers' recommendations is clear from the medical records that Mr. Sellers possessed on October 11, 2019.  The medical records include the following statements: (1) that Mr. Barnes, who was "clinically sober" and possessed "decision-making capacity," stated that "he would not like to have blood" and that he "understood the risks" included "death, brain damage, severe disability" (Doc. # 29-2, at 4); (2) that medical providers were "withholding blood as patient is a Jehovah's witness" and that they would "respect his and families [sic] wishes" (Doc. # 29-2, at 5); (3) that Mr. Barnes "is a Jehovah's witness and refused blood products" (Doc. # 29-2, at 6); and (4)  that the patient and his wife "are adamant that they do not want any products that are derived from human or animal," notwithstanding the explanation from two physicians "to the patient and the wife that [the patient] has a high likelihood of dying from blood loss since he refuses any type of blood products whatsoever" (Doc. # 29-2, at 8).

Mr. Sellers does not address why he believes the medical records were insufficient to justify an amendment to the answer to allege the affirmative defense that Mr. Barnes failed to mitigate his damages by refusing a medically recommended blood transfusion. The services of a legal nurse consultant would not be required "to aid in understanding" Mr. Barnes's refusal to consent to a blood transfusion. (Doc. # 31-1, ¶ 8.) Rather, Mr. Sellers states only that he learned additional "details" concerning Mr. Barnes's medical treatment at Plaintiff's deposition, including that Plaintiff had a durable power of attorney for her husband's medical care. But Mr. Sellers does not explain how these additional "details" defend his delay in moving to amend the answer. Nor has Mr. Sellers elucidated why his counsel's "working remotely as a response to the current pandemic" (Doc. # 31-1, ¶ 9) prevented him for nearly two months—from shorty after February 19, 2020, to April 14, 2020—from electronically filing the motion to amend Mr. Sellers's answer. Mr. Sellers has not shown that he was diligent in waiting nearly six months after the date he received the medical records to seek to amend his answer to add the affirmative defense of failure to mitigate.

Mr. Sellers concedes that "there was a delay prior to filing a motion to amend his answer" (Doc. # 31, at 4) on April 14, 2020. However, arguing that the amendment would not prejudice Plaintiff, he urges the court to apply the excusable neglect standard in Federal Rule of Civil Procedure 6(b). (Doc. # 31, at 3–4);

7

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (establishing a four-factor balancing test for the excusable neglect standard, which includes consideration of the danger of prejudice to the non-moving party).

In *Sosa*, the Eleventh Circuit rejected the movant's reliance on Rule 6(b)'s excusable neglect standard: "[W]hen a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused," not Rule 6(b). 133 F.3d at 1418 n.2. The absence of prejudice to the opposing party is not part of the inquiry under *Sosa*'s good cause standard. *See id.* at 1418 (Rule 16(b)'s "good cause standard prevents the modification [of a scheduling order's deadline] unless the schedule cannot be met despite the diligence of the party seeking the extension.") (citation and internal quotation marks omitted) (alterations added). Mr. Sellers's reliance on the excusable neglect standard and the absence of prejudice to Plaintiff is misplaced.

## V. CONCLUSION

Mr. Sellers has not shown good cause for his untimely motion to amend the answer to allege the affirmative defense of failure to mitigate. Accordingly, it is ORDERED that Mr. Sellers's Motion to Reconsider Order Denying Motion for Leave to Amend (Doc. # 31) is DENIED.

DONE this 11th day of September, 2020.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE